The Olmsted Hotel v. Commissioner.
Olmsted Hotel v. Commissioner
Docket No. 28375.
United States Tax Court
1952 Tax Ct. Memo LEXIS 146; 11 T.C.M. (CCH) 694; T.C.M. (RIA) 52209; June 30, 1952
*146 Morris Berick, Esq., 1090 Union Commerce Bldg., Cleveland, Ohio, and David A. Kaufman, Esq., for the petitioner. Stanley W. Ozark, Esq., for the respondent. MURDOCK
Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies as follows for the fiscal periods ending January 31st in each of the years mentioned: Declared
Excess
Income
Value Excess
Profits
Year
Tax
Profits Tax
Tax
1946
$ 5,683.77
$15,063.56
$60,291.74
1947
54,423.55
1948
42,905.20 The only issue which has to be decided is whether the petitioner is an association taxable as a corporation or whether it properly filed partnership returns for the taxable periods. Findings of Fact The Olmsted Hotel, situated in Cleveland, Ohio, was owned in 1942 by the Bereal Hotel Company which leased the premises on December 30 of that year to Stanley K. Feinberg, as trustee, for a term commencing January 1, 1943 and ending August 31, 2011. Alvin B. Lowe and Ruth, his wife, Jacob Lurie and Anna, his wife, Carl Shparago and Hannah, his wife, Frank A. Schmidt and Fannye, his wife, entered into an agreement with the lessee on February 17, 1945 to purchase *147 the lease from him together with all of the stock of Guild Bar, Inc., an Ohio corporation, formed for the purpose of securing a liquor license. The purchase price was $219,520.12. None of the purchasers was experienced in the hotel business. Lowe took title to the lease as trustee for the others. The interests of the individuals in the properties were as follows: Percentage
of interest
Alvin B. Lowe
18.75
Ruth Lowe
18.75
Jacob Lurie
18.75
Anna Lurie
18.75
Carl Shparago
6.25
Hannah Shparago
6.25
Frank A. Schmidt
6.25
Fannye Schmidt
6.25
The Lowes, Luries, Shparagos and Schmidts entered into a trust agreement dated February 20, 1945 naming Lowe and Lurie as co-trustees to hold title to the Olmsted Hotel property. The death of a beneficiary was not to terminate the trust. No assignment of an interest in the trust was to be binding until the original was lodged with the trustees. The trustees were to deal with the trust estate only on written authorization to do so signed by the owners of a majority of the beneficial interests. The owners agreed to contribute to the trust, in proportion to their interests, where necessary to pay any money which *148 the trustee might be compelled to expend. A trustee could resign and could be replaced by the owners of a majority of the interests. One paragraph of the instrument contained the following: "The Beneficiaries hereunder shall in their own individual right, and by a majority in interest, vote for the management and control of the TRUST ESTATE in every respect, which vote may be by written proxy, and the Trustees shall not be called upon to do anything in the management or control of the TRUST ESTATE in any manner whatsoever, except upon the written direction of a majority in interest of the beneficial interest hereunder." Each trustee was to receive $25 a year for holding title to the trust estate. The same parties entered into an "Agreement of Joint Adventure", "as of the 20 day of February, 1945". It recited the acquisition of the lease for the Olmsted Hotel property and the capital stock of Guild Bar, Inc. It stated that the parties desired to own and operate that property as a joint venture and not as a partnership. The parties agreed to become joint ventures in the business of owning and operating the property and to share profits and losses in proportion to their interests in *149 the property. The conduct of the business was vested in the owners of a majority of the beneficial interests. Those interests in the trust property and in the operation of that property were to remain identical at all times. The parties were to meet upon the call of any two for the purpose of considering the affairs of the business of the joint venture and the taking of such action as they deemed advisable. The will of a majority interest was to control. The agreement provided elaborate means for selling interests in case any owner died or in case any acceptable offer to buy was received. Generally, it provided that the other owners should have first opportunity to buy at the price offered by an outsider. Sales could be made within a family group without offering to anyone else. Neither a trustee nor a beneficiary had the right to terminate the agreement or require any distribution of the property except as provided in the agreement. The death of a beneficiary or any change in trustees was not to terminate the agreement or require any change in operation. The 250 shares of stock of Guild Bar, Inc. were placed 100 in the name of Carl Shparago, 100 in the name of Frank A. Schmidt *150 and 50 in the name of Alvin B. Lowe. Schmidt was elected president, Shparago, vice-president, and Lowe, secretary-treasurer of that corporation. A resident manager of the hotel was employed by the group at all times material hereto. The petitioner never had a board of directors, a minute book or any other record of meetings, never elected any officers, never sent out formal notice of meetings of any kind, and never had a seal. Lowe lived in the vicinity of Cleveland. The other owners lived away from Cleveland. All four of the male owners met at the hotel and elsewhere many times each year for the purpose of operating and supervising the management of the hotel through the resident manager. Each received daily operating reports from the hotel and monthly operating reports from auditors. The four male owners authorized the opening of a bank account in a Cleveland bank in which checks could be signed by any two of their number. They did not file, during the taxable year, a certificate required by Ohio to be filed by every partnership transacting business in the state under a fictitious name. Lowe signed many more checks than any of the others and he performed a number of acts on *151 behalf of all but only with the approval and consent of the other three. He had no greater authority than any of the other men in the operation and management of the property. The wives did not participate in the management or operation of the property. The petitioner filed partnership returns for the taxable years with the collector of internal revenue for the Eighteenth District of Ohio. The Commissioner, in determining the deficiencies, held that the petitioner constituted an association within the meaning of Section 3797 of the Internal Revenue Code and was taxable as a corporation. The petitioner was not an association within the meaning of Section 3797 of the Code and was not taxable as a corporation during the taxable years. All facts stipulated by the parties are incorporated herein by this reference. Opinion MURDOCK, Judge: A large part of the testimony at the trial related to when the trust agreement and the "Agreement of Joint Adventure" were entered into. The petitioner attempted to show that they were not executed in February 1945 but were executed in April 1948 with the result that the operations during the taxable years were conducted *152 without any written agreements. The evidence on this point is not clear and convincing or free from contradiction and doubt. No findings as to when the agreements were executed have been made and none are necessary. The result would be the same even though the documents were executed in February 1945. The question is one of fact - whether the petitioner more nearly resembled a corporation or a partnership as defined in Section 3797 (a) (3) and (2). The latter expressly includes a joint venture. The parties had an agreement under which they operated from the beginning, whether or not it was in writing and, under that agreement, all four of the male owners actively participated and acted jointly in the operation and management of the property. The petitioner, contrary to the contention of the Commissioner, did not have centralized management by Lowe, representing the owners, during the taxable years. He contends that Lowe was constituted managing director for the others but the evidence shows that Lowe had no more authority than any of the other men. Lowe sometimes overstated his position in letters and documents but all four male owners participated jointly in the operation and management *153 of the property and they never surrendered any of their rights in that connection to Lowe. An individual owner could not easily separate from the rest, the petitioner could survive the death of one of the owners and interests in the ownership and operation could be transferred outside the four family groups by a most cumbersome process. There is thus some resemblance to a corporation. The personal liability of the owners which might result from their operation of the property was not limited in their agreements. The petitioner did not have directors, officers, by-laws, minutes, a seal or any such customary characteristics of a corporation. The Court has concluded after carefully considering all of the evidence that this organization, for tax purposes during the taxable years, must be treated as a partnership and not as an association taxable as a corporation. Other alternative issues raised by the petitioner need not be decided. Decision will be entered for the petitioner.